

**Dated: August 21, 2015**

**The following is ORDERED:**



Janice D. Loyd
U.S. Bankruptcy Judge

_____

### IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| In re: | ) | Case No. 13-12590-JDL |
| | ) | Ch. 7 |
| Stephen William Case and | ) | |
| Melissa Dawn Case, | ) | |
| | ) | |
| Debtors. | ) | |
| | ) | |
| Pharyn Resources, Inc. and | ) | |
| Swan Energy, Inc., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | ADV. NO. 13-1093-JDL |
| | ) | |
| Stephen William Case and | ) | |
| Melissa Dawn Case, | ) | |
| | ) | |
| Defendants | ) | |

### OPINION AND ORDER REGARDING
### PLAINTIFFS' MOTIONS FOR SUMMARY JUDGMENT

#### Introduction

This proceeding is before the Court for resolution of Plaintiffs' two *Motions for Summary Judgment* (the "Motion"). By one *Motion* [Doc. 37], Plaintiffs contend

Defendants should be denied a discharge pursuant to 11 U.S.C. § 727(a)(2)(A) and (B) and § 727(a)(4)(A), because within one year before filing for bankruptcy, they transferred property with the intent to hinder, delay, or defraud Plaintiffs, and that they knowingly and fraudulently made a false oath or account in disclosing assets and transactions in their Schedules and Statement of Financial Affairs.  By their second *Motion* [Doc. 35], Plaintiffs seek a determination that Defendant Stephen Case obtained $404,500 from Plaintiffs, purportedly to drill an oil and gas well, by means of actual fraud rendering the debt to Plaintiffs nondischargeable under 11 U.S.C. § 523(a)(2).  The second *Motion* also asserts that Defendant Stephen Case, rather than utilizing the funds obtained from Plaintiffs to drill a well, expended the same for other purposes, for which Plaintiffs seek a determination that Defendant Stephen Case embezzled the funds rendering the obligation to Plaintiffs nondischargeable under 11 U.S.C. § 523(a)(4).  Defendants have not responded to either of Plaintiffs' *Motions for Summary Judgment* as required by Fed. R. Bankr. 7056 and Local Rule 7056-1-C.  Because the Court finds that Defendants should be denied a discharge under § 727(a), it is not necessary that the Court make a determination as to the dischargeability of the debt owed Plaintiffs under § 523(a)(2) or (4).

Although the Local Rules provide that a party's failure to respond to a motion for summary judgment is deemed consent to the court granting the motion, the Court nonetheless has ruled substantively on such motions and generally does not grant dispositive motions on procedural default alone.  Thus, notwithstanding a non-responding party's "consent", the Court cannot grant a motion for summary judgment based solely on Defendants' failure to respond and must consider the merits of the motion.  *Issa v. Comp*

*USA*, 354 F.3d 1174, 1177-78 (10th Cir. 2003); *Reed v. Nellcor Puritan Bennett*, 312 F.3d 1190, 1194-95 (10th Cir. 2002) (holding that a district court cannot grant an unopposed motion for summary judgment unless the moving party has first met its burden of production demonstrating it is legally entitled to judgment under Rule 56). The Court will therefore require Plaintiffs to meet summary judgment standards notwithstanding Defendants' failure to come forward with any evidence and argument in opposition to the *Motion*.

## Jurisdiction

This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334(b) and 157(a). This matter seeking a determination of an objection to discharge and the dischargeability of a particular debt is a core proceeding under 28 U.S.C. § 157(b)(2)(I) and (J) over which this Court has authority to enter a final order. Venue is proper pursuant to 28 U.S.C. § 1409(a).

## Summary Judgment Standards in General

It is appropriate to grant a motion for summary judgment when the pleadings and other materials in the record, together with supporting affidavits, if any, demonstrate that there is no genuine dispute with respect to any material fact and that the moving party is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(c), made applicable to this adversary proceeding by Fed. R. Bankr. P. 7056. "[A] party seeking summary judgment always bears the initial responsibility of informing the . . . court of the basis for its motion, and . . . [must] demonstrate the absence of a genuine issue of material fact". *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548 (1986). Courts must review the

evidentiary material submitted in support of the motion for summary judgment to ensure that the motion is supported by evidence.  If the evidence submitted in support of the summary judgment motion does not meet the movant's burden, then summary judgment must be denied.  Hearsay evidence cannot be considered on a motion for summary judgment.  *Wiley v. United States*, 20 F.3d  222, 226 (6th Cir. 1994).  When considering a motion for summary judgment, the court views the record in the light most favorable to the party opposing summary judgment. See, *Deepwater Investments, Ltd. v. Jackson Hole Ski Corp.*, 938 F.2d 1105, 1110 (10th Cir. 1991) (the court "must view the record in a light most favorable to the parties opposing the motion for summary judgment".); *Harris v. Beneficial Oklahoma, Inc. (In re Harris*), 209 B.R. 990, 995 (10th Cir. BAP 1997).  Denial of summary judgment requires existence of genuine material issues that "can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party".  *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 250, 106 S. Ct. 2505 (1986).  No genuine issue of fact exists if a rational fact finder, when viewing the record as a whole, could not find for the party opposing the summary judgment.  See *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 578, 106 S. Ct. 1348 (1986) ("where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial".  "[T]he non-moving party may not rest on its pleadings but must set forth specific facts showing that there is a genuine issue for trial as to those dispositive matters for which it carries the burden of proof".  *Vitkus v. Beatrice Co.*, 11 F.3d 1535, 1539 (10th Cir. 1993).

4

## Summary Judgment Where Showing Fraudulent Intent Required

As a general rule, questions involving a person's intent or other state of mind cannot be resolved by summary judgment. *Prochaska v. Marcoux*, 632 F.2d 848, 851(10th Cir. 1980), *cert. denied* 451 U.S. 984, 101 S.Ct. 2316 (1981); *Buell Cabinet Co. v. Suddeth*, 608 F.2d 431, 433 (10th Cir. 1979) ("questions of intent involve many intangible factors, such as witness credibility, that are best left to the consideration of a fact finder after a full trial"). But in an exceptional case, a person's "denial of knowledge may be so utterly implausible in light of concealed or irrefutable evidence that no rational person could believe it," making a trial on the question of the person's state of mind unnecessary. *In re Herrman*, 355 B.R. 287, 291 (Bankr. D. Kan. 2006) (quoting *In re Chavin*, 150 F.3d 726, 727-29 (7th Cir. 1998)).

Defendants neither controverted Plaintiffs' statement of uncontroverted facts in their *Motion*, nor presented any additional statements of fact supported with references to an affidavit or other portions of the record. In cases involving a § 727 objection to discharge, debtors, while perhaps not controverting the moving party's statement of facts, often argue that fraudulent intent cannot be inferred from those facts, and that summary judgment on a false oath claim is inappropriate. See e.g. *In re Weddington,* 457 B.R. 102, 110 (Bankr. D. Kan.). In this case, Defendants have made no argument in contravention of the facts alleged by Plaintiffs. The Court will therefore accept Plaintiffs' statement of facts as true and draw any inferences from them as the Court deems appropriate.

Because of the "fresh start" policy underlying the Bankruptcy Code and the harshness of the penalty a denial of a debtor's discharge, the Court construes the

discharge provisions under the Bankruptcy Code liberally in favor of the debtor and strictly against the party objecting to discharge. See *Gullickson v. Brown (In re Brown)*, 108 F.3d 1290, 1292 (10th Cir. 1997) (acknowledging generally" that the Bankruptcy Code must be construed liberally in favor of the debtor and strictly against the creditor"); *Rosen v. Bezner*, 996 F.2d 1527, 1534 (3rd Cir. 1993) (noting that "§ 727 is to be construed liberally in favor of the debtor and that a total bar to discharge is an extreme penalty"); *Freelife International, LLC v. Butler*, 377 B.R. 895, 915 (Bankr. D. Utah 2006) ("exceptions to discharge are to be construed strictly against a creditor and liberally in favor of the debtor").

Notwithstanding the presumption in favor of a "fresh start", a debtor who seeks the protection afforded under the Bankruptcy Code has a duty to fully disclose the nature of his assets and financial affairs when completing his statements and schedules. *Butler*, 377 B.R. at 914-15 ("In exchange for that 'fresh start', the Code requires debtors to accurately and truthfully present themselves before the court."); *The Cadle Co. v. King (In re King)* 272 B.R. 281, 300 (Bankr. N. D. Okla. 2002) ("The bankruptcy schedules and statement of affairs do not ask the debtor to make an assessment of what he thinks are important assets or debts. Debtors must, under oath, list all creditors and assets, as well as all transfers of property within the prior year."). The denial of discharge provisions serve to ensure that "those who seek the shelter of the bankruptcy code do not play fast and loose with their assets or with the reality of their affairs". *Palmacci v. Umpierrez*, 121 F.3d 781, 787 (1st Cir. 1997). The Court will test Plaintiffs' facts and argument keeping in mind those principles.

6

## Undisputed Facts

The following facts are not in dispute:[1]

1. Defendants filed a voluntary petition under Chapter 7 of the Bankruptcy Code on June 3, 2013. [#13-12590-JDL Doc. 1].

2. Defendants filed their Schedules and Statement of Financial Affairs ("SOFA") on June 18, 2013. [Doc. 1; Ex.6; Ex. 7].  Those Schedules and SOFA were signed under oath upon penalty of perjury.  Defendants testified at their first meeting of creditors that they had read the Schedules and SOFA before signing them, and they were true and correct to the best of their knowledge. [Exhibit 9, pgs.3, 5].

3. Defendants' Schedule B filed in the bankruptcy case indicate "None" in response to the question as to the amount of cash owned by Defendants as of the filing date.  [Doc. 1, Schedule B].  In fact, Defendant Stephen Case testified in deposition that on the petition date he had in his safe at home approximately $8000.00 from funds purportedly borrowed from a family member and approximately $7500.00 from an account receivable.  [Plaintiffs' Ex. 1, pgs. 156–159].

4. Defendants' Schedule B listed as an asset "Assets in the Stephen William Case Trust dated July 11, 2008" with a value of $0.00. [Ex. 6, pg. 9].  In fact, as Case testified at the first meeting of creditors, the Trust had in it two houses, a condominium in Florida and mineral interests. [ Ex. 6; Ex. 9, pgs.30-31].  Melissa Case also had a trust that was not disclosed in the Schedules. [ Ex.6 ].

---

[1] Plaintiff listed 145 paragraphs of facts which it asserts are not in dispute. The Court need not make findings of fact with regard to all 145 numerical paragraphs. Some "facts" are not material, and others are cumulative. The finding of facts by the Court are more than sufficient to support its conclusions of law.

5.  At the first meeting of creditors the Trustee requested that Defendant amend their schedules to reflect the proper value of assets in both of their trusts. [Exhibit 9, pg. 31].  The schedules were never amended.

6.  Defendants failed to schedule non-producing mineral interests because, as Stephen Case testified, they were not profitable. [Ex. 1, Pgs. 152-153].

7.  Defendants scheduled their interest in the corporate entity Telluric Energy as having a $0.00 value.  In fact, Telluric Energy did hold legal title to certain mineral interests.  Although Defendants testified that they treated the Telluric Energy mineral interests as their personal assets, those mineral interest were not disclosed in the schedules as being owned by Defendants. [Undisputed Fact # 78, 79, 80].  Stephen Case testified that he advised the trustee about the Telluric Energy mineral interests only after the trustee had been told about the same by a disgruntled creditor. [Undisputed Fact #80].

8.  Defendants' Schedules and SOFA did not disclose any claims or lawsuits which Defendants had against anybody.  At the meeting of creditors Stephen Case testified that he did not have any claims against anybody. [Undisputed Fact #97].  In fact, Defendants had a claim against Stephen Case's brother, Frank, for  $75,000.00 which was not disclosed in the Schedules.  Defendants also failed to disclose a $75,000.00 cross-claim against Homer Reddick and Reddick Roofing and Guttering in litigation pending in the District Court of Garfield County, Oklahoma, Case No. CJ - 2012-26. [Undisputed Fact #94].

9.  Defendants' SOFA reflects 2011, 2012 and 2013 income at approximately $40,000.00 for each year. [Exhibit 7].  Defendants' various bank accounts for 2012 show approximately $440,000.00 of deposits. [Undisputed Fact # 104].

8

10.  Defendants stated "none" in response to question # 3(c) in the SOFA as to whether they had repaid a debt to an insider within one year of filing bankruptcy.  In fact, it was later determined that on June 18, 2012, within one year prior to filing bankruptcy, Defendants paid Melissa Cases' mother, Patsy Sorrels, $12,470.00 for a loan made to Defendants about a year earlier. [Undisputed Fact #119].

11.  Defendants' SOFA, question #10 (a) did not disclose all property, other than property transferred in the ordinary course of business, transferred within the 2 years immediately preceding the commencement of the case. [Exhibit 7].  In fact, pursuant to a Settlement Agreement dated December 12, 2012, Defendants (individually and as trustees) paid Wildhorse Stone of Kansas, Inc., $33,000.00 in settlement of a judgment taken against Defendants in the District Court of Sedgwick County, Kansas, which judgment was domesticated in the District Court of Garfield County, Oklahoma, Case No. CJ-2012-26.  [Undisputed Fact #132, 133 and 134].

12.  Defendants also did not disclose in SOFA #10(b) that between July 12, 2011, and January 5, 2012, that Defendant Stephen Case had made payments totaling $25,501.25 to Hawley Services, Inc. in settlement of the judgment taken against him on August 22, 2011 in the District Court of Grant County, Oklahoma, Case No. CJ-2008 - 89. [Exhibit 14; Undisputed Fact 135, 136].

13.  Defendants' SOFA question #7 did not disclose any gifts or charitable contributions made within one year preceding the commencement of the case.  [Exhibit 7]. In fact, in the year preceding the bankruptcy, Defendants made approximately $24,000.00 in "tithes" or other gifts to their church.  [Undisputed Fact 125, 126 and 127].

9

14.    Defendants' SOFA stated "none" in response to question #10(b) requiring disclosure of any property transferred within 10 years immediately preceding the commencement of the case to a self-settled trust or similar device of which the debtor is the beneficiary.  In fact, Stephen Case's trust was established in 2008 with substantial real property conveyed to it since that time. [Undisputed Fact #138, 139 and 140].

15.    On August 9, 2012, Plaintiffs and Defendants filed an *Agreed Judgment* in the District Court of Love County, Oklahoma, awarding judgment against Defendant Stephen Case in the amount of $404,500.  [Undisputed Fact #38; Ex. 29].  On August 27, 2012, an *Agreed Costs and Attorney Fee Judgment* was entered awarding Plaintiffs the sum of $20,000.  [Undisputed Fact #39; Ex. 30].

16.    Toward satisfaction of the judgment in their favor, Plaintiffs began hearings in aid of execution including obtaining an *Order Directing Judgment Debtor to Attend Asset Hearing and Enjoining Judgment Debtor from Transferring Property* ("HOA Order"). [Undisputed Fact #40; Ex. 31].  Over the next several months, Plaintiffs sought to obtain documents from Defendant Stephen Case.  Case failed to produce the ordered documents and failed to appear before the court as ordered. [Undisputed Fact #82, 43, 44, 45]. Plaintiffs then cited Case for contempt on two occasions.  The first trial for Case's contempt was stricken by agreement, and the arraignment on the second contempt citation, set for June 17, 2013, was stayed by the filing of Case's bankruptcy on June 3, 2013. [Undisputed Fact #50, 51, 52, 54 and 55].

17.    On January 15, 2013, the District Court of Love County entered a *Journal Entry of Judgment* in favor of Blackbird Energy Partners II, LP ("Blackbird") and against Case in

the amount of $257,246.  [Undisputed Fact #60; Ex. 42].  On April 11, 2013, Blackbird

obtained an *Order Directing Judgment Debtor to Attend Asset Hearing and Enjoining*

*Judgment Debtor from Transferring Property* ("Blackbird HOA Order").  [Undisputed Fact

#62; Ex. 44].  As a result of Case's failure to appear pursuant to the Blackbird HOA Order,

the District Court issued a bench warrant for his arrest with bail in the amount of $25,000.

[Undisputed Fact #65, 66].  On May 16, 2013, Case was arrested and was released upon

posting bond. [Undisputed Fact #7].

## Discussion

Plaintiffs contend that Defendants should not receive a discharge based on § 727

(a)(2)(A), (a)(2)(B) and (a)(4)(A). Those Code sections provide:

> The court shall grant the debtor a discharge, unless –
> . . .
>
> (2)    the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed –
>
> > (A)    property of the debtor, within one year before the date of the filing of the petition; or
> >
> > B)    property of the estate, after the date of the filing of the petition;
> . . .
>
> (4)    the debtor knowingly and fraudulently, or in connection with the case -
>
> > (A)    made a false oath or account;
> >
> > . . .

11

## A. Concealment or Transfer with Fraudulent Intent

Plaintiffs assert that Defendants should be denied a discharge under § 727(a)(2)(A) because they acted to hinder, delay and defraud their creditors prior to their bankruptcy, and violated § 727(a)(2)(B) because they acted to hinder, delay and defraud their creditors after the filing of the bankruptcy petition. To obtain a denial of discharge under § 727(a)(2)(A), the plaintiff must prove each of the following elements by a preponderance of the evidence: (1) the debtor transferred, removed, concealed, destroyed, or mutilated, (2) property of the estate, (3) within one year prior to the filing of bankruptcy, (4) with the intent to hinder, delay, or defraud a creditor. *Gullickson v. Brown*, 108 F.3d 1290, 1293 (10th Cir. 1997).

Section 727(a)(2)(A) and (B) both require proof of the debtor's intent to hinder, delay, or defraud a creditor or an officer of the court. Intent to hinder, delay, or defraud under these sections may be shown through circumstantial evidence from which the Court may infer actual intent to hinder, delay or defraud creditors. *In re Herrman*, 355 B.R. 287, 292 (Bankr. D. Kan. 2006) (noting that discharge may be denied when the court is "persuaded, either by direct evidence or by inference from the facts and circumstances of the Debtors conduct, that he made the transfers with the actual intent to hinder, delay, or defraud the Plaintiff."); *In re Lang*, 246 B.R. 463, 469) (Bankr. D. Mass. 2000), *aff'd* 256 B.R. 539 (1st Cir. BAP 2002) (noting that because "no debtor will admit to an improper intent . . . [t]he Court must therefore consider the surrounding facts and circumstances and draw inferences of the debtor's actual intent from debtor's actions"). In addition, there is no requirement that the debtor intend to hinder, delay, or defraud *all* of his or her creditors;

"the statute requires only that the debtor make the transfer with intent to hinder, delay, or defraud 'a creditor'". *Aweida v. Cooper (In re Cooper)*, 150 BR 462, 467 (D. Colo. 1993).

When considering whether a debtor's conduct supports an inference of fraudulent intent, courts have identified certain badges of fraud," the presence of which may suggest an intent to hinder, delay, or defraud within the meaning of § 727(a)(2).  These indicia of fraud include: (1) concealment of pre-bankruptcy conversions; (2) conversion of assets immediately before the filing of the bankruptcy petition; (3) gratuitous transfers of property; (4) continued use by the debtor of transferred property; (5) transfers to family members; (6) obtaining credit to purchase exempt property; (7) conversion of property after entry of a large judgment against the debtor; (8) a pattern of sharp dealing by the debtor prior to bankruptcy; (9) insolvency of the debtor resulting from the conversion of the assets; and (10) the monetary value of the assets converted.  *Herrman*, 355 B.R. at 292 (citing *Marine Midland Bus. Loans, Inc. v. Carey (In re Carey)*, 938 F.2d 1073, 1077 & n.4 (10th Cir. 1991).

Other circumstances evidencing actual intent to defraud under § 727(a)(2) include "the financial condition of the party sought to be charged both before and after the transaction in question; . . . the existence of a pattern or series of transactions after the onset of financial difficulties, or pendency or threat of suits by creditors; and . . . the general chronology of events and transactions under inquiry".  *Cooper,* 150 B.R. at 465.

It is doubtlessly true that some of the "badges of fraud" are present here. But drawing an irrefutable inference of fraudulent intent is difficult. The mantra of summary judgment standards that "the inferences to be drawn from the underlying facts must be

viewed in the light most favorable to the party opposing the motion" makes it difficult to find fraudulent intent at the summary judgment stage of any adversary proceeding. *U.S. Trustee v. Garland (In re Garland)*, 417 B.R. 805 (10th Cir. BAP 2009); *In re Herrman*, 355 B.R. 287, 291 (Bankr. Dist. Kansas 2006).

Much of what Plaintiffs point to as evidence of fraudulent intent is Case's lack of cooperation, delay, lack of candor and evasiveness in the hearings on assets and post-judgment collection efforts in the District Court. This type of conduct, while frustrating to creditors, is not unusual in debtor-creditor litigation. The debtor is trying to hold onto his property, and the creditor is trying to take it. The debtor's conduct may be oppositional, it may even be fraudulent, but the Court at the summary judgment stage and without having observed the debtors is not in a position to find with any assurance the fraudulent intent necessary under § 727(a)(2). This is particularly true where the court does have sufficient evidence to draw proper inferences of fraudulent intent under another ground to deny discharge, here § 727(a)(4). Accordingly, *the Motion for Summary Judgment* based upon § 727(a)(2) is denied.

## B. False Oath

Plaintiffs assert that Defendants failed to disclose numerous assets and other transactions in their Schedules and Statement of Financial Affairs and that such omissions constitute false oaths within the meaning of § 727(a)(4). To prevail on a claim for denial of discharge under § 727(a)(4), the plaintiff must establish the following elements by a preponderance of the evidence: (1) that the debtor made a statement under oath; (2) that the statement was false; (3) that the debtor knew the statement was false; (4) that the

14

debtor made the statement with intent to defraud; and (5) that the statement related materially to the debtor's bankruptcy case. *Gullickson v. Brown* (*In re Brown* ),108 F.3d 1290 (10th Cir. 1997 ); *In re Eigsti*, 323 B.R. 778, 783-84 (Bankr. M.D. Fla. 2005). The burden of proof rests with the party opposing discharge, but "once it reasonably appears that the oath his false, the burden falls upon the bankrupt to come forward with evidence that he has not committed the offense charged". *Boroff v. Tully (In re Tully)* , 818F.2d 106, 110 (1st Cir. 1987).

Congress set the bar for denial of a discharge under this section very high by specifying that the debtor must have made a false oath or account "knowingly and fraudulently".  It is not enough for the trustee or objecting creditor to point to inaccuracies and inconsistencies in the debtor's schedules, as troubling as those might be. *In re Phouminh,* 339 B.R. 231 (Bankr. D. Colo. 2005).  Debtor will not be denied discharge if a false statement is due to mere mistake or inadvertence.  *Brown* at 1294; *In re Butler*, 38 B.R. 884, 889 (Bankr. D Kan. 1984).  Moreover, an honest error or mere inaccuracy is not a proper basis for denial of discharge.  *Brown* at 1295;  *In re Magnuson*, 113 B.R. 555, 559 (Bankr. D. N.D. 1989).  The "mistake" or "I didn't think it was important" defenses have their limits.  A debtor has an uncompromising duty to disclose whatever ownership interests are held in property, and "it is not for the debtor to pick and choose or obfuscate the answers".  *Fokena v. Tripp, (In re Tripp)*, 224 B.R. 95 (Bankr. N.D. Iowa 1998).

It is not necessary to show that the debtor acted deliberately to deceive the trustee and the creditors; rather, the requisite fraudulent intent can be shown by establishing that the debtor acted with reckless disregard for the truth. *In re Croft*, 500 B.R. 823 (Bankr.

15

W.D. Texas 2013).  And as is particularly true in the present case, the cumulative effect of a large number of falsehoods in the debtor's schedules is evidence of  reckless disregard for the truth, and is sufficient to circumstantially  prove fraudulent intent under § 727(a)(4)(A).  *In re Crumley*, 428 B.R. 349 (Bankr. N.D. Texas 2010).

As stated above, the Court has found at least 12 material misstatements or nondisclosure by Defendants in their Schedules, SOFA, or testimony at the meeting of creditors.  "The subject matter of a false oath is material and warrants a denial of discharge if it is related to the debtor's business transactions, or if it concerns the discovery of assets, business dealings, or the existence of a disposition of the debtor's property".  See, e.g. *In re Calder*, 907 F. 2d 953, 955 (10th Cir. 1990).  The Court concludes that Defendants' undisputed omissions were material because the omitted information concerned the discovery of assets in existence or disposition of their property.  *Id.*

Plaintiffs have pointed out several additional misstatements and omissions.  There doubtlessly could have been more found by the Court.  The material and cumulative nature of these misstatements and omissions as found by the Court are more than sufficient to establish a pattern of falsity so as to bar Defendants' discharge under § 727(a)(4)(A). Defendants had the opportunity to come forward with evidence to refute, mitigate or explain these errors and omissions which they made under oath. They chose not to do so. Accordingly, the Court finds that Plaintiffs have met their burden of showing that there was no material issue of disputed fact; that Defendants  did not rebut the inference of fraudulent intent raised by the numerous inaccuracies and omissions, and that as a matter of law Defendants had made false oaths in connection with their bankruptcy.

### D. Plaintiffs Claims for Nondischargeability of a Debt
### Under § 523(a)(2) and (6) are Moot

In Chapter 7 cases, §§ 727 and 523, respectively, govern individual debtors

discharge *in toto* and the dischargeability of individual debts.  If one of the 10 objections

to discharge enumerated in § 727(a) is proven, none of the debtor's obligations will be

discharged by the bankruptcy filing.  Because the Court finds that Defendants discharge

should be denied, the dischargeability of their particular debt to Plaintiffs is moot.  See

*Bank of Cushing v. Vaughn (In re Vaughn)*, 342 B.R. 385 (10th Cir. BAP 2006)

(unpublished);  *Cepelak v. Sears (In re Sears)*, 246 B.R. 341, 352 (8th Cir.  BAP 2000)

("Since the granting of an exception to discharge under § 523(a) is subsumed within a

denial of general discharge under § 727(a), the § 523 claims are moot".].   Since

Defendants are not receiving a discharge, it is obvious the question of whether a debt is

excepted from their discharge is irrelevant.

### Conclusion

For the reasons set forth above, Plaintiffs' *Motion for Summary Judgment* [Doc.37]

insofar as it is predicated upon § 727(a)(4)(A) is **GRANTED**, and Defendants are hereby

denied a discharge.  A separate judgment in favor of Plaintiffs and against Defendants

shall be entered by the Court contemporaneously with this *Opinion and Order* pursuant to

Fed. R. Bankr. P. 9021, giving effect to the determinations reached herein.  The *Motion for*

*Summary Judgment* [Doc. 35] based on the § 523 claims need not be addressed as those

claims are moot.

# # #